```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**NANCY C. LESHO**

    **Plaintiff,**

**v.**                        **//   CIVIL ACTION NO. 1:16CV19**
                                              **(Judge Keeley)**

**SPECIALIZED LOAN SERVICES, LLC; and**
**THE BANK OF NEW YORK MELLON, FKA THE**
**BANK OF NEW YORK, as Trustee for the**
**Certificate Holders of CWABS, Inc.,**
**Asset-Backed Certificates, Series 2006-20,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFF'S MOTION TO AMEND COMPLAINT [DKT. NO. 34]

Pending before the Court is the Motion to Amend Complaint filed by the plaintiff, Nancy C. Lesho ("Lesho"), in which she seeks "to add as a party the servicing agent to which [her] account was transferred during the pendency of this action." For the following reasons, the Court **GRANTS** the motion (Dkt. No. 34).

### I. BACKGROUND

Lesho filed her original complaint in the Circuit Court of Harrison County, West Virginia, against the defendants, Specialized Loan Services, LLC ("SLS"), and The Bank of New York Mellon, FKA The Bank of New York, as Trustee for the Certificate Holders of CWABS, Inc., Asset-Backed Certificates, Series 2006-20 ("BNY Mellon") (collectively, "the Defendants") (Dkt. No. 1-2). BNY Mellon is the holder of Lesho's mortgage loan, and SLS was the loan servicer when Lesho filed her original complaint. Id. at 8.

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO AMEND COMPLAINT [DKT. NO. 34]**

Lesho alleges that her home was completely destroyed by a fire in June 2014, and that she was hospitalized due to complications from a stroke for much of December 2015. Id. at 8-9. Although Lesho claims that she never received notice of foreclosure, SLS scheduled her home for a foreclosure sale on January 7, 2016. When she contacted SLS, a representative advised Lesho that her account was in arrears in the amount of $3,673, and that she would only be able to reinstate the loan by paying attorney's fees and costs associated with avoiding the foreclosure. Id. at 9-10. Lesho's original complaint alleged four causes of action: 1) illegal default fees, in violation of W. Va. Code §§ 46A-2-127(g), 46A-2-115, and 46A-2-128, 2) misrepresentation of amount due, in violation of W. Va. Code § 46A-2-127(d), 3) tortious interference with contract, and 4) breach of contract. Id. 10-14.

On February 10, 2016, the Defendants removed the case to this Court pursuant to 28 U.S.C. § 1332 (Dkt. No. 1). The Court held a scheduling conference on April 14, 2016, but continued the case for 45 days because the parties were engaged in preliminary settlement discussions (Dkt. No. 10). When the parties failed to settle their dispute, the Court entered a limited schedule on discovery and dispositive motions on June 1, 2016 (Dkt. No. 15). Thereafter, on October 3, 2016, during a status conference, the parties placed on

the record the terms of an agreement to resolve the case, and the Court directed them to notify it when each had fulfilled its respective obligations under the settlement agreement (Dkt. No. 22).

It was only through a status report filed on June 16, 2017, that the parties advised the Court for the first time that servicing of Lesho's mortgage loan had been transferred to Shellpoint Mortgage Servicing, a division of New Penn Financial, LLC ("Shellpoint"), and that the parties were having difficulty finalizing their settlement agreement (Dkt. No. 24). When the parties were unable to submit a dismissal order by August 23, 2017, the Court conducted a status conference on October 4, 2017, at which it learned that the parties had not yet complied with the terms of their settlement agreement (Dkt. No. 27). As a consequence, the Court scheduled the case for trial beginning on January 4, 2018 (Dkt. No. 35).

On October 11, 2017, Lesho moved for leave to amend her complaint to add Shellpoint as a defendant (Dkt. No. 34). According to Lesho, after her loan was transferred to Shellpoint in December 2016, it returned all five payments she had made to SLS under the settlement agreement. Id. at 2. As a result, Lesho seeks to assert

a fifth cause of action for illegal return of payments, in violation of W. Va. Code § 46A-2-115(c) (Dkt. No. 34-1 at 9-10).

## II. DISCUSSION

Under the rules, a plaintiff may amend her complaint "once as a matter of course" within either 21 days after serving the complaint, or 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because SLS opposes Lesho's proposed amendment (Dkt. No. 37), she may only amend her complaint with the Court's leave.

The grant or denial of a motion to amend is within the discretion of the Court. Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013). "[D]elay . . . is not sufficient reason to deny leave to amend." Rather, the Court should freely grant leave unless the amendment "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v.

Davis, 371 U.S. 178, 182 (1962)); see also Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999).

In the Fourth Circuit,

> [w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (alteration in original). In other words, the further a case progresses, the more likely it is that the defendant will be prejudiced by an amendment. See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012) (citing Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009)).

After considering the specific circumstances in this case, the Court concludes that granting leave to amend is appropriate, despite SLS's argument that "the proposed amendment is prejudicial and the product of undue delay" (Dkt. No. 37 at 2). Indeed, it has been nearly ten months since Shellpoint engaged in the allegedly unlawful conduct that forms the basis of Lesho's amendment, but Lesho's delay is mitigated by the circumstances of this case. Until

recently, the parties were attempting to resolve the matter without further litigation or court involvement. Lesho promptly moved for leave to amend only one week after the parties advised the Court of their failed settlement, and almost three months before trial. McNeeley v. Wells Fargo Bank, N.A., No. 2:13-cv-25114, 2015 WL 1543124, at *2 (S.D.W.Va. Apr. 2, 2015) (reasoning that a Rule 15(a) motion made three months before trial was not "shortly before or during trial" as usually required for a finding of prejudice).

SLS's concern regarding further prejudicial delay is unwarranted (Dkt. No. 37 at 3-4). With several months remaining before trial, "the parties can conduct further discovery, if needed, with permission from the court," McNeeley, No. 2:13-cv-25114, 2015 WL 1543124, at *2, and Lesho has indicated that she will readily consent to such discovery (Dkt. No. 34 at 3). Moreover, the complete dearth of discovery in this case during the two years that it has been pending suggests that the necessary scope of any inquiry will be quite limited. See Mayfield, 674 F.3d at 379 ("The amount of discovery is also a relevant consideration in determining whether prejudice would result . . . .").

The additional allegations in the amended complaint arise out of servicing the same mortgage loan at issue in the original complaint, and relate to the parties' efforts to settle the instant

lawsuit. Thus, they simply are not "an entirely new event and nucleus of facts," nor will they "change the nature of the litigation." Id. at 380; cf. Hill v. Equifax Info. Servs., LLC, No. 1:11CV107, 2013 WL 474789, at *4 (M.D.N.C. Feb. 7, 2013) (denying motion to amend because additional claims were "so clearly distinct from the original claims that they [would] vastly expand the complexities of proof and risk confusion of the jury").

The "advanced" stage of this litigation does not pose a risk of prejudice to the new defendant, Shellpoint, which has been servicing Lesho's mortgage loan for nearly one year. At an earlier hearing, counsel for SLS advised that it has been working with Shellpoint throughout 2017 to effectuate the proposed settlement agreement SLS reached with Lesho in October 2016. Therefore, Shellpoint has been aware of this lawsuit and will not require much time to familiarize itself with Lesho's allegations. Cf. Knisely v. Nat'l Better Living Ass'n, Inc., No. 3:14-CV-15, 2015 WL 1868819, at *8 (N.D.W.Va. Apr. 23, 2015) ("Given the purported close relationship between NBLA and the proposed new defendants, NBLA likely has been aware of those allegations for quite some time . . . .").

### III. CONCLUSION

In conclusion, for the reasons discussed, the Court **GRANTS** Lesho's Motion to Amend Complaint (Dkt. No. 34), and **DIRECTS** the Clerk to file her amended complaint (Dkt. No. 34-1).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: November 8, 2017.

>                /s/ Irene M. Keeley
>                IRENE M. KEELEY
>                UNITED STATES DISTRICT JUDGE